**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

DAVID KING,

   Plaintiff,      Case No.: 4:08-cv-00515-SPM-WCS

vs.

The STATE OF FLORIDA, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,
and HENRY BARNET, GREGORY GIBSON,
PINKY G. HALL, ROY C. DICKEY,
and AMY M. SCHMIDT,

   Defendants.

_____/

**ORDER DENYING MOTIONS TO DISMISS IN PART AND
GRANTING MOTIONS TO DISMISS IN PART**

   THIS CAUSE comes for consideration upon Defendants' Motions to Dismiss

Plaintiff's Amended Complaint (docs. 19 & 20) pursuant to Rule 12(b)(6) for failure

to state a claim upon which relief can be granted.  Plaintiff has filed responses

including memoranda of law to the motions to dismiss (docs. 22 & 24) and

Defendants have filed replies including memoranda of law to each of Plaintiff's

responses (docs. 33 & 34).  For the reasons set forth below, this Court denies the

motions to dismiss as to Count III (Whistle-blower's Act violation) and Counts VI and

VII (both for tortious interference), and this Court grants the motions to dismiss as

to Count IV (negligence) and Count V (intentional infliction of emotional distress).

## I.    LEGAL STANDARD FOR MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

The court must deny a motion to dismiss under Rule 12(b)(6), even if recovery is remote and unlikely, unless the plaintiff's factual allegations are so insufficient that the right to relief remains purely speculative.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. (citations omitted).  On the other hand, the Supreme Court has repeatedly stressed that "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotations omitted).

All factual allegations in the complaint must be accepted as true.  Id; see also Watts v. Florida International University, 495 F.3d 1289, 1295 (11th Cir. 2007) (noting that in ruling on a 12(b)(6) motion the court should construe the pleadings broadly and view the allegations in the light that is most favorable to the plaintiff).  In determining how to rule in a motion to dismiss for failure to state a claim, the court considers both the pleadings and attached written exhibits.  See Fed. R. Civ. P. 10(c); GSW, Inc. v. Long County, Georgia, 999 F.2d 1508, 1510 (11th Cir. 1993).  The function of the court in deciding a 12(b)(6) motion is not to assess the veracity of the evidence or the likelihood of a successful verdict for the plaintiff, but to

"determine whether the complaint is legally sufficient."  <u>See</u> <u>Clark v. Potter</u>, No. 5:07cv41/RS/EMT, 2008 WL 186619, *1 (N.D. Fla. Jan. 18, 2008).

## II.    BACKGROUND

Plaintiff David King was employed by the Florida Department of Environmental Protection ("DEP").  Defendants, both DEP itself and its employees Henry Barnet, Gregory Gibson, Pinky Hall, Roy Dickey, and Amy Schmidt have been sued by Plaintiff for multiple causes of action culminating from various incidents involving workplace occurrences that Plaintiff found objectionable.  Plaintiff primarily complained about two activities.  First, Plaintiff complained of favoritism given to a new DEP employee during the hiring process.   Second, Plaintiff complained of the Bureau Chief Elwood Stephens' use of emergency dispatch lines to report a false crime in order to incriminate another employee (hereinafter referred to as "Stephens' call").

Plaintiff consulted with Investigator Percy Griffin at the DEP's Office of the Inspector General ("OIG") about filing an anonymous complaint regarding Stephens' call but ultimately decided not to file a complaint at that time.   Plaintiff also complained to David Tripp with the Florida Highway Patrol about Stephens' call. Subsequently, Plaintiff was  called into a meeting by superior officers and told not to complain any more about either of the issues.

Approximately one month after this meeting, someone mailed to the Florida Department of Law Enforcement and the Florida Department of Corrections

envelopes containing partial background investigation information on two new DEP employees, both of whom Plaintiff perceived as hired due to favoritism.  Plaintiff was questioned in a meeting by supervisors and then placed under investigation for the mailing of these envelopes.  After this meeting, Plaintiff emailed Roy Dickey at DEP's OIG to request whistle-blower status regarding prior issues they had discussed.

On January 19, 2007, Plaintiff was questioned by DEP's OIG and placed on administrative leave with pay while the investigation into the envelopes continued. Between January 18 and 25, 2007, Plaintiff filed eight separate complaints with OIG regarding multiple events and issues, including the perceived hiring favoritism and the false crime reported to the emergency dispatch line by a superior officer.  On May 31, 2007, Plaintiff was terminated from DEP.

Plaintiff successfully appealed his termination to the Public Employees Relations Commission ("PERC") and DEP was ordered to reinstate Plaintiff. Sometime after PERC ordered Plaintiff's reinstatement but before Plaintiff was actually reinstated, DEP initiated a second investigation into Plaintiff for the following: working at Wal-Mart while on paid administrative leave; committing sexual and racial harassment; and promising people jobs if Governor Crist were successful in his 2006 gubernatorial bid.  Plaintiff was threatened with criminal prosecution for working at Wal-Mart while on administrative paid leave.  Eventually, Plaintiff felt he had to choose between facing criminal charges or not returning to DEP.  DEP

informed Plaintiff that his reinstatement was conditioned upon the results of the second investigation.  Plaintiff decided not to accept reinstatement.

## III.   DISCUSSION

### (a)  Count III:  Whistle-blower's Act Violation

Plaintiff alleges that Defendant DEP violated Florida Statute § 112.3187 ("Whistle-blower's Act") by retaliating against Plaintiff for complaining about Stephens' call.  The Whistle-blower's Act states the specific requirements for a public employee claiming protection against retaliation as a whistle-blower.  Whistle-blower status is limited to persons "who disclose information on their own initiative in a written and signed complaint" or "who submit a complaint to the Chief Inspector General in the Executive Office of the Governor, to the employee designated as agency inspector general . . . or to the Florida Commission on Human Relations." Fla. Stat. § 112.3187(7).  A complaint made to the agency inspector general need not be in writing.  Crouch v. Public Service Commission, 913 So. 2d 111, 111-12 (Fla. 1st Dist. Ct. App. 2005) ("[Florida Statute § 112.3187(7)] does not require a complaint submitted to the employee designated as agency inspector general to be in writing.").

Second, the information reported must constitute a "substantial and specific danger to the public's health, safety, or welfare"; or alternatively, it must constitute "gross mismanagement, malfeasance, misfeasance, gross waste of public funds . . . or gross neglect of duty committed by an employee or agent of an agency . . . ."

Fla. Stat. §§ 112.3187(5)(a)&(b).  The Whistle-blower's Act should be liberally construed.  See Irven v. Dept. of Health and Rehabilitative Services, 790 So. 2d 403, 405 (Fla. 2001) ("[T]he Act is remedial and should be given a liberal construction.").

Further, for a plaintiff to be eligible for relief under the Whistle-blower's Act, the plaintiff must demonstrate the following: "(1) prior to termination the employee made a disclosure protected by the statute; (2) the employee was discharged; and (3) the disclosure was not made in bad faith or for a wrongful purpose, and did not occur after an agency's personnel action against the employee."  Dept. of Transportation v. Florida Commission on Human Relations, 842 So. 2d 253, 255 (Fla. 1st Dist. Ct. App. 2003).  Plaintiff has set forth an exhaustive list of entities to whom he complained.  (e.g. Pl.'s Am. Compl. ¶ 14, 22, 28, 42, 43.)  Defendant maintains that Plaintiff never complained in a format that complies with the Whistle-blower's Act's procedural requirements, and even if he did, the nature of Plaintiff's complaints are not of the type protected by the Whistle-blower's Act.  A review of the various complaints reveals that some are sufficient to sustain a Whistle-blower's Act claim and some are not.

Plaintiff alleges that he consulted with Investigator Percy Griffin at the DEP's OIG about whether or not to file an anonymous complaint regarding Bureau Chief Stephens' phone call to the Tallahassee Regional Communications Center to report a false crime.  (Pl.'s Am. Compl. ¶ 22.)  Based upon the conversation with Griffin,

Plaintiff decided not to file a complaint.  (Pl.'s Am. Compl. Ex. F at 243).  Because Plaintiff concedes he did not file a complaint to Griffin at that time, this incident does not meet the statutory requirements for a complaint.

Plaintiff next alleges that he called David Tripp with the Florida Highway Patrol to complain about Stephens' call.  (Pl.'s Am. Compl. ¶ 22.)  This complaint was not in writing, nor was it made to the DEP's inspector general, so it does not meet the requirements of Fla. Stat. § 112.3187(7).

On November 4, 2006, Plaintiff emailed Roy Dickey at DEP's OIG to "request Whistle Blower Status on the incident that [they] talked about on Friday, November 3, 2006."  (Pl.'s Am. Compl. ¶ 28, Ex. I.)  In the email, Plaintiff conceded that he had previously "decided not to be a complainant" but stated that he feared retaliation by his superiors at work because of the "inquisition" he was subjected to on November 1, 2006.  It is possible that this email meets the requirements of a complaint under the Whistle-blower's Act.  The email was sent to an investigator at OIG, which satisfies the requirements of Fla. Stat. § 112.3187(7).  Additionally, the email could be construed as a complaint under the Whistle-blower's Act because Plaintiff asked for whistle-blower protection regarding prior incidents that Plaintiff and Dickey had discussed, thereby incorporating into the email these previous incidents.  The Whistle-blower's Act is to be construed liberally.  Irven v. Dept. of Health and Rehabilitative Services, 790 So. 2d 403, 405 (Fla. 2001).  Therefore, a potential complainant is not required to use formal legalistic language in order to lodge a

complaint that invokes whistle-blower protection.

Plaintiff also alleges that he made a complaint to the OIG within the DEP regarding Captain Stephens' telephone call to the Tallahassee Radio Control Center at the Florida Highway Patrol.  (Pl.'s Am. Compl. ¶ 38, Ex. M at 7.)  The OIG Report dated March 31, 2007, states, "On January 18, 20, 21, and 25 [Plaintiff] submitted eight separate complaints to the Office of the Inspector General . . . ."  (Pl.'s Am. Compl. ¶ 38, Ex. M at 1.)  This complaint satisfies the statutory requirement that the complaint be "submit[ted] . . . to the Chief Inspector General in the Executive Office of the Governor [or] to the employee designated as inspector general . . . ."  Fla. Stat. § 112.3187(7).

The OIG Report indicated that Plaintiff submitted his complaint via email. (Pl.'s Am. Compl., Ex. M, pg. 7.)  A complaint submitted to the OIG is not held to the same writing and signature requirement of a general complaint.  See Crouch v. Public Service Commission, 913 So. 2d 111, 111-12 (Fla. 1st Dist. Ct. App. 2005).[1] Therefore, Plaintiff's email complaint to OIG on January 18, 2007 appears to have met the requirement of Fla. Stat. § 112.3187(7).

Defendant contends that these complaints to OIG are insufficient because they occurred after Plaintiff was subject to "personnel action," that is after Plaintiff

_____

[1]That is not to say that an email from Plaintiff with Plaintiff's name in the individual email would not constitute a written and signed document that would fulfill the statutory requirement for the filing of a general complaint.  However, that question is not before this Court.

was notified that he was subject to an internal investigation.   One of the requirements for a whistle-blower complaint is that "the disclosure was not made in bad faith or for a wrongful purpose, and did not occur after an agency's personnel action against the employee."   Dept. of Transportation v. Florida Commission on Human Relations, 842 So. 2d 253, 255 (Fla. 1st Dist. Ct. App. 2003).   Defendant alleges that Plaintiff began filing these complaints with OIG after he was notified of the investigation; Plaintiff alleges that he was first notified of the investigation on January 19, 2007, one day after Plaintiff began filing complaints with OIG.   This Court is bound to view the allegations in Plaintiff's complaint in the light most favorable to Plaintiff.   As a result, the complaint is sufficient to overcome dismissal on this ground.

Additionally, Defendant asserts that because Plaintiff filed OIG complaints approximately three months after the alleged incidents occurred, this is evidence of bad faith.   Defendant's argument fails because there are many explanations as to why an employee might wait to file official complaints against his employer. Additionally, Plaintiff has alleged that he tried to shed light on the problems complained of many times and in various forms prior to the OIG complaints.

Finally, Defendant argues that the matters about which Plaintiff complained were not sufficient to invoke whistle-blower protection because they were not related to a "substantial and specific danger to the public's health, safety, or welfare", nor did they constitute "gross mismanagement, malfeasance, misfeasance, gross waste

of public funds . . . or gross neglect of duty committed by an employee or agent of an agency . . . ."  Fla. Stat. §§ 112.3187(5)(a)&(b).  The liberal construction of the Whistle-blower's Act applies to this element as well.  See Rosa v. Dep't of Children and Families, 915 So. 2d 210, 211-12 (Fla. 1st Dist. Ct. App. 2005) ("In considering the definition of misfeasance in this section [of the Whistle-blower's Act], we must use a liberal construction."); Hutchison v. Prudential Insurance Co., 645 So. 2d 1047, 1050 n.4 (Fla. 3d Dist. Ct. App. 1994) (finding that the Whistle-blower's Act is not restricted only to acts which threaten "the health, safety, or welfare of the public at large").  Plaintiff's complaints concern multiple issues, any of which could satisfy the requirements.  Plaintiff complained about a supervisor's alleged bias in the hiring process, something which could certainly amount to a "danger to the public's health, safety, or welfare" given that the problems related directly to the hiring of law enforcement officers, positions which directly implicate public safety. Additionally, Plaintiff complained about a supervisor's improper use of the emergency dispatcher system to report a false crime in order to test an employee's response time.  Tying up limited emergency lines to report a false crime could constitute a "danger to the public's . . . safety" as well as "misfeasance."[2]

In sum, while Plaintiff's Amended Complaint is admittedly vague and

---

[2]Misfeasance is defined by the Florida Supreme Court as "the improper doing of an act which a person might lawfully do . . . ."  Irven v. Dep't of Health and Rehabilitative Services, 790 So. 2d 403, 407 n.3 (Fla. 2001) (quoting Black's Law Dictionary 1000 (6th ed. 1990)).

convoluted as to how exactly Plaintiff met the requirements of the Whistle-blower's Act,[3] this Court is satisfied, based upon the liberal construction of the Whistle-blower's Act and the low pleading threshold for Plaintiff to meet to survive a 12(b)(6) motion, that Count III should not be dismissed for failure to state a claim.

**(b)  Count IV:  Negligence**

Plaintiff next alleges that Defendant, DEP, was negligent in supervising and conducting investigations of Plaintiff.  In its motion to dismiss, Defendant asserts that it owed no duty to Plaintiff and even if it did, it is protected by sovereign immunity.  The duty element of a negligence claim is a question of law, not a question of fact.  See McCain v. Florida Power Corp., 593 So. 2d 500, 502 (Fla. 1992).  Therefore it is proper for this Court to determine whether a duty existed. See Williams v. Davis, 974 So. 2d 1052, 1057 n.2 (Fla. 2007) ("[E]stablishing the existence of a duty under our negligence law is a minimum threshold legal requirement that opens the courthouse doors to the moving party . . . .").

A duty can be either a common law duty or a statutory duty.  In this case, Defendant did not owe a common law duty of care to Plaintiff.  It has long been

---

[3]Defendant argues in a footnote in its second reply that Plaintiff's Amended Complaint is not specific enough for Defendant to make certain determinations about whether Plaintiff met all of the requirements for a Whistle-blower's Act claim.  (Def.'s Reply Memo. at 2 n.2.)  If Defendant believes it is unable to properly respond to Plaintiff's Amended Complaint due to its vagueness, a motion to dismiss for failure to state a cause is not the appropriate remedy but could be better addressed in a motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e).

established that for certain governmental activities, a common law duty of care simply does not exist.  "How a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duly enacted by a governmental body is a matter of governance, for which there never has been a common law duty of care."  Trianon Park Condo. Ass'n v. City of Hialeah, 468 So. 2d 912, 919 (Fla. 1985).  Defendant, as an agency of the state tasked with certain law enforcement responsibilities, falls within this category of governmental entity.   Defendant's performing investigations into Plaintiff's wrongdoing is a discretionary power because it is designed to ensure that the laws of DEP, a government agency, are followed by its employees.  See id. at 920 (listing examples of discretionary powers for government law enforcement agencies for which there is no common law duty of care, including deciding whether to make an arrest, deciding how to classify prisoners, deciding whether to bring criminal charges against an individual, and deciding whether to enforce a city ordinance).

Indeed in Pritchett v. City of Homestead, 855 So. 2d 1164 (Fla. 3d Dist. Ct. App. 2003), a police officer sued the city for "negligent supervision" of an internal investigation into the police officer's "possible wrong doing."  Id. at 1165.  Citing to Trianon, the court found that the city owed the police officer no duty of care in how it performed its internal investigations of its own officers.  Id.; see also State v. Kowalski, 617 So. 2d 1099, 1100 (Fla. 5th Dist. Ct. App. 1993) (finding state attorney's office had no duty of care to individual in performing internal staff

investigation).  Plaintiff attempts to distinguish these cases by characterizing them as relating only to criminal liability, while the instant case involves an investigation into whether to terminate an employee.  However, Plaintiff has alleged that part of the investigation into his behavior was into whether he had committed a crime.[4] Additionally, in <u>Pritchett</u>, it was an internal affairs investigation which was ultimately forwarded to the state attorney's office, who referred it back to internal affairs to be dealt with internally.  That case involved an internal investigation into conduct that could have been dealt with either criminally or administratively (or both), similar to the instant case.  Additionally, while Plaintiff might not be a police officer as was the plaintiff in <u>Pritchett</u>, Plaintiff is a law enforcement officer of the state of Florida.

Having found that Defendant did not have a common law duty of care, this Court also finds that Defendant did not have a statutory duty of care either.  Plaintiff cites multiple state statutes which govern the procedures for investigating and terminating career public employees and lay out law enforcement officers' rights in their employment.  While it is true that these statutes outline procedures that government officials are to follow when investigating or terminating an employee, Plaintiff does not, and cannot, point to a place in these statutes in which a private cause of action for negligence was created.  In determining whether a statutory cause of action is created by a statute that does not express a provision imposing

---

[4] Plaintiff was accused by Defendant of committing larceny by working a second job while on paid administrative leave.  (Pl.'s Am. Compl. ¶ 52.)

civil liability, legislative intent guides the courts' determination.  See Horowitz v. Plantation General Hospital Ltd. Partnership, 959 So. 2d 176, 181 (Fla. 2007).

Plaintiff claims that Florida Statutes §110.227 imposes a duty upon DEP to ensure that employees are only terminated for cause.  Even if this duty was created by this statute, again, nowhere in this statute is a private cause of action created. See Horowitz, 959 So. 2d at 181 ("[T]he recognition of a duty [does] not answer the question of whether a breach of that duty would give rise to civil liability.")(citations omitted).  Instead, employees who believe that the procedures in this statute have not been followed properly are directed to file an appeal with PERC.  Fla. Stat. § 110.227(5)(a).

Plaintiff also relies on Chapter 112 of the Florida Statutes generally as creating a statutory duty of care for failure to "protect employees through termination only for cause."  However, Plaintiff does not point to a specific part of the statute that indicates that a private cause of action for negligence for failure to follow the statute was intended.  Any reliance Plaintiff has on Fla. Stat. § 112.532 is entirely erroneous as Fla. Stat. § 112.534 makes it clear that injunctive relief is the only remedy for violations of § 112.532.  Additionally, Fla. Stat. § 112.533(1) directs every law enforcement agency to create a system for the "receipt, investigation, and determination of complaints received by such agency from any person . . . ."  It then goes on to establish certain procedures that each agency must incorporate into its investigatory process.  Additionally, Fla. Stat. § 112.533(4) creates criminal liability

for anyone who violates the privacy requirements of this statute.   Nowhere is a private cause of action vis-a-vis the government agency and its law enforcement personnel created.

Plaintiff also points to Fla. Stat. § 112.3187, the Florida Whistle-blower's Act, as "prohibiting adverse employment action for protected activities."  This argument is entirely misplaced as this statute specifically authorizes a civil action for employees alleging retaliation for protected activities once specific procedures have been exhausted first.  This statute also provides specific remedies available for those employees.  Employees who believe they have been retaliated against in violation of this statute may sue for violation of this statute, as Plaintiff has in Count III, not for general negligence in failing to enforce the statute.

Defendant further alleges in the motion to dismiss that it is protected from liability in this case by sovereign immunity.  However, as the Florida Supreme Court has noted, "conceptually, the question of the applicability of . . . immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity."  Kaisner v. Kolb, 543 So. 2d 732, 737 (Fla. 1989) (quoting Williams v. State, 34 Cal. 3d 18, 22, 192 Cal.Rptr. 233, 235, 664 P.2d 137 (1983)).  As Plaintiff has not established that Defendant had a common law or statutory duty of care, Count III for negligence is dismissed with prejudice, and this Court therefore finds it unnecessary to address the sovereign immunity question.

**(c)  Count V:  Intentional Infliction of Emotional Distress**

Plaintiff also claims that Defendants Hall, Dickey, and Schmidt committed the tort of intentional infliction of emotional distress by conducting improper investigations into Plaintiff, threatening Plaintiff with criminal charges, and generally conspiring to get Plaintiff fired or drive Plaintiff to resign.  In order to state a claim for intentional infliction of emotional distress, the alleged conduct must (1) be intentional or reckless; (2) be outrageous; (3) cause emotional distress; and (4) the emotional distress must be severe.  See Williams v. Worldwide Flight Services Inc., 877 So. 2d 869, 870 (Fla. 3d Dist. Ct. App. 2004).  Defendants have filed a motion to dismiss this claim based on the contention that their alleged conduct does not rise to a level in which it can be said to be "outrageous."

"Outrageous" conduct is defined as that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Ford Motor Credit Co. v. Sheehan, 373 So. 2d 956, 959 (Fla. 1st Dist. Ct. App. 1979).  Plaintiff alleges that Defendants have engaged in a series of actions, including falsely accusing Plaintiff of committing a crime, designed to drive Plaintiff out of DEP.  Prior Florida cases have established that the type of workplace behavior alleged by Plaintiff cannot be construed as "outrageous" as required by law.

In Williams v. Worldwide Flight Services Inc., 877 So. 2d 869 (Fla. 3d Dist. Ct. App. 2004), the plaintiff alleged, among other things, that his supervisor

subjected him to multiple cruel racist insults, instructed an employee to create a false record of disciplinary incidents, falsely accused the plaintiff of theft and "constantly and persistently threatened [the plaintiff] with job termination for no apparent reason." Id. at 870.  In Scheller v. American Medical International, Inc., 502 So. 2d 1268 (Fla. 4th Dist. Ct. App. 1987), the plaintiff, an employee of the defendant who was fired and successfully sued the defendant on other legal grounds, accused the defendant of "[i]ntentional falsification of documents in the prior trial," "[a]ttempt[ing] to bribe witnesses," "[e]vasion of court orders," "[i]gnoring the prior jury verdict and judgment," and "[f]alsely accusing [the plaintiff] of theft." Id. at 1269.  In both of these cases, the courts found that neither plaintiff could state a claim for intentional infliction of emotional distress because the alleged behavior, while quite objectionable, did not constitute "outrageous" behavior.  Williams, 877 So. 2d at 870; Scheller, 502 So. 2d at 1271; see also Lay v. Roux Laboratories, Inc., 379 So. 2d 451, 452 (Fla. 1st Dist. Ct. App. 1980) (finding that the defendant supervisor's use of humiliating language, including racial insults, and threats to the plaintiff over her job were not "outrageous" and therefore the claim for intentional infliction of emotional distress was dismissed with prejudice for failure to state a cause of action).

Plaintiff accuses Defendants of threatening Plaintiff with criminal charges based on an affidavit Defendants procured by instructing a subordinate employee to create it.  Plaintiff also accuses Defendants of thwarting the PERC ruling by

reopening investigations into Plaintiff's conduct with the intent of keeping Plaintiff from returning to work at DEP.  While this behavior, if committed as alleged, could certainly be considered unprofessional, objectionable, and even cruel, it cannot, as a matter of law, be considered "outrageous" as required in order to state a claim for intentional infliction of emotional distress.  Therefore, Count V is dismissed with prejudice.

**(d)  Count VI and VII:  Tortious Interference**

Plaintiff alleges that Defendants Gibson,[5] Hall, Dickey, and Schmidt (Counts VI and VII) have tortiously interfered with Plaintiff's employment relationship with DEP by conducting unfavorable investigations into possible misconduct by Plaintiff. The elements for a claim of tortious interference with a business relationship are: "(1) the existence of a business relationship under which the claimant has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship; (4) by a third party; and (5) damages to the claimant caused by the interference." Sloan v. Sax, 505 So. 2d 526, 527-28 (Fla. 3d Dist. Ct. App. 1987).

Sufficient facts have been alleged to support the first, second, third, and fifth elements.  At issue is the fourth element, that is, whether Defendants are third parties to the business relationship.  Defendants contend that they are not third parties to the employment relationship because they were fellow employees of the

---

[5]Gibson is only listed in Count VII.

same entity as Plaintiff.

The general assumption is that a party to a business relationship is not considered a third party and is therefore not liable for tortious interference.  See, e.g., Romika-USA, Inc. v. HSBC Bank USA, N.A., 514 F. Supp. 2d 1334 (S.D. Fla. 2007) ("Under Florida law, a claim for tortious interference cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party."); Abruzzo v. Haller, 603 So. 2d 1338 (Fla. 1st Dist. Ct. App. 1992) ("An agent of a corporate party to a contract, acting within his capacity and scope as an agent, cannot be considered to be a separate entity outside of the contractual relationship which can tortiously interfere with that relationship.").  However, unlike most tortious interference cases, in which a franchiser/franchisee, contractor/contractee, or lessor/lessee relationship is at the heart of the matter, in this case both Plaintiff and Defendants are employed by the same employer.  All of Defendants and Plaintiff are, or were at the time the allegations occurred, employed by DEP at various levels and with various responsibilities.

The proper test for whether Defendants, as Plaintiff's co-workers, are party to Plaintiff's employment relationship with DEP is whether Defendants had the power to hire or fire employees.  See Albittron v. Gandy, 531 So. 2d 381, 388-89 (Fla. 1st Dist. Ct. App. 1988) (finding that a tortious interference claim could proceed against the defendant, a county commissioner, by an employee of the county because the defendant "did not have the authority to hire or fire employees on

behalf of the [c]ounty" and therefore was not a party to the employment relationship); cf. Abruzzo v. Haller, 603 So. 2d 1338, 1340 (Fla. 1st Dist. Ct. App. 1992) (dismissing a tortious interference claim because the defendant was an agent of the employer corporation and was acting within his authority to hire and fire the plaintiff and therefore could not be a third party); West v. Troelstrup, 367 So. 2d 253, 255 (Fla. 1st Dist. Ct. App. 1979) (dismissing tortious interference claim because the defendant, who was the plaintiff's supervisor and engaged in a conspiracy to fire the plaintiff, had the authority to hire and fire the plaintiff and therefore was a party to the employment relationship).

Plaintiff alleges, and Defendants concede, that Defendants' various job responsibilities "did not include the hiring or firing of Department employees." (Pl.'s Am. Compl. ¶ 128, 138; Def.'s Mot. to Dismiss ¶ 1.)  Because it is not a contested issue that Defendants' did not have the authority to hire or fire DEP employees, Defendants cannot be said to be a party to the employment relationship between Plaintiff and DEP.  As such, Defendants could be third parties to the employment relationship in satisfaction of the fourth element of a tortious interference claim, and Defendants' motions to dismiss as to Counts VI and VII will be denied.

Accordingly, it is

ORDERED AND ADJUDGED as follows:

1.      Defendant's motion to dismiss (doc. 20) is **denied** as to Count III.

2.      Defendant's motion to dismiss (doc. 20) is **granted with prejudice** as

to Count IV.

3.      Defendants' motion to dismiss (doc. 19) is ***granted with prejudice*** as

to Count V.

4.      Defendants' motion to dismiss (doc. 19) is ***denied*** as to Counts VI and

VII.

DONE AND ORDERED this 15th day of June, 2009.


   *s/ Stephan P. Mickle*

Stephan P. Mickle
United States District Judge